## (August 21, 1980)

■ NATIONAL FILM FINANCE CORPORATION, Appellant, v PALOMAR PIC-TURES INTERNATIONAL, INC., Respondent.—Judgment, Supreme Court, New York County, entered January 18, 1980, setting aside two special jury verdicts in favor of plaintiff and dismissing the complaint in a breach of contract action, affirmed, with costs. On the issues principally litigated on this appeal, the materiality of the clause requiring the defendant to consult with plaintiff with regard to any distribution agreement concerning the film in question, "The Darwin Adventure", and whether defendant in fact breached that duty of consultation, we are in agreement with the trial court's determination that the consultation provision was not material and in any event was not violated. We are confirmed in this judgment by the

unmistakable reality that plaintiff quite purposefully chose to await further developments with regard to the success of the film before seeking to enforce the rights now claimed to have been violated. On the issue which has caused our colleague to dissent in part, the agreement is explicit that the parties were to divide equally the gross film rentals accruing from the distribution of the film. Gross film rentals were defined as including "advance payments * * * unless they are returnable." The question presented is whether the $2 million received by defendant from the distributor as an advance on six pictures, including "The Darwin Adventure", was "returnable." We think it was "returnable" on any realistic evaluation of the distribution agreement. The distribution agreement provided: "Distributor shall be entitled to recoup its advance from the first monies accruing to Producer hereunder from any of the Pictures in any part of the world, and no sums are payable to Producer hereunder until the advance is fully recouped." The possibility was clearly presented in this arrangement that the advance received by the defendant from the distributor might be recouped, in effect returned, if films other than one to which the parties were co-venturers generated proceeds sufficient to equal or surpass the advance. This possibility appears to have become a reality. The "Darwin" film proved not to be profitable, but two other films in the package generated proceeds substantially greater than the advance received by the defendant. Nothing in this record suggests that the defendant in fact derived any profit attributable to "The Darwin Adventure." Accordingly, we see no basis either in law or on the basis of fair dealing between the co-venturers to support plaintiff's claim. Concur—Murphy, P. J., Birns, Sandler and Sullivan, JJ.

Kupferman, J., dissents in part in a memorandum as follows: The plaintiff National Film Finance Corporation advanced money on a sharing arrangement to the defendant Palomar Pictures International, Inc., for the production of a motion picture entitled "The Darwin Adventure" based on the life of Charles Darwin. Palomar had arranged with Brightwater Film Productions for this production, which the defendant would finance. In the agreement between the plaintiff and the defendant there was a provision for the defendant to be consulted with respect to any distribution arrangements for the film, although in the event of any disagreement, the defendant's decision would prevail. The defendant arranged with Twentieth Century-Fox Film Corporation for the distribution of seven films in production, one of which was the "Darwin" film, for an advance of $2,500,000. Only six films were ultimately supplied, and so that advance was reduced to $2,000,000. In the agreement of Palomar with Twentieth Century-Fox there was no allocation, although Fox was to recoup the advance from the earnings of any of the films. There were two special jury verdicts in favor of the plaintiff in connection with the plaintiff's contention that there was no consultation with respect to the distribution agreement, but the verdicts were set aside by the trial court on the ground that the consultation agreement was not a material part of the agreement. There is no dissent from that result inasmuch as the defendant in any event had the ultimate right of decision, and further, there was some indication of the plaintiff being informed prior to the signing of the distribution agreement, and the arrangement was with a major distributor, and the remonstrations really did not materialize to any degree until after it was obvious that the film would not be successfully distributed. However, I must dissent from the affirmance of the dismissal at the close of the plaintiff's case of the cause of action with respect to a claim for a portion of the advance. While the arrangement between the plaintiff

and the defendant incorporated that part of the defendant's agreement with Brightwater which gave the defendant the right to allocate with respect to any combined distribution advance, the defendant has contended, and it is clear, that they were co-venturers. Accordingly, there was owed by the defendant to the plaintiff a duty of fair dealing. (See *Meinhard v Salmon,* 249 NY 458; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79; *Underhill v Schenck,* 238 NY 7.) That some portion of the advance should have been allocated to this film would seem to be evident from the fact that when the number of films that would be covered by the agreement was reduced from seven to six, there was deducted from the advance the sum of $500,000. This is evidence of the fact that each film, although then a relatively unknown quantity, had some significance. It cannot be doubted that films such as "Sleuth" and "The Heartbreak Kid" had special significance, but the "Darwin" film could not simply be written off based on its ultimate failure at the box office. At the time of the original distribution package agreement, it was the defendant that arranged for the blanket advance, and it owed a duty to make a fair allocation of some kind to the "Darwin" film, which advance it would share with the plaintiff. Accordingly, I would reverse and grant a new trial to the plaintiff on the limited issue of the interest of the plaintiff in the money advanced from Twentieth Century-Fox, being its first cause of action.